**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

PRO QUIP LLC,                                          Case No.:      25-20194-PDR

    Debtor.                                          Chapter 11

_____/

BLACK STAR INVESTMENT GROUP LLC,            Adv. No.:      25-_____-PDR

    Plaintiff,

v.

PRO QUIP LLC,

    Defendant.

_____/

**<u>ADVERSARY COMPLAINT</u>**

Plaintiff, Black Star Investment Group LLC ("Plaintiff"), by and through undersigned counsel, hereby files this Adversary Complaint against defendant and debtor, Pro Quip LLC ("PQ") to recover money, determine non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and (6), and seek an award of attorney's fees and costs.

**<u>THE PARTIES, JURISDICTION AND VENUE</u>**

1.     This proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure in order to recover money and seek a determination of the dischargeability of debts and an award of attorney's fees and costs.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(I).

1

3. Pursuant to 28 U.S.C. §§ 1408 and 1409, venue is proper in this district.

4. Plaintiff is a Florida limited liability company with its principal place of business in Broward County, Florida.

5. PQ is the debtor and a Florida limited liability company with its principal place of business in Broward County, Florida.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Purchase and PQ's Representations

6. On June 19, 2023, Plaintiff and PQ entered into an oral agreement (the "Agreement") whereby Plaintiff agreed to purchase from PQ a 2020 Bobcat T-66 Skid Steer (the "Bobcat") with 928 hours that was fully serviced.

7. Prior to entering into the Agreement, PQ advertised for sale the Bobcat on its website located at "www.pro-quipllc.com."

8. The Bobcat holds and was assigned serial number "B4SB11068" by its manufacturer that is unique to that skid steer.

9. PQ represented on its website that the Bobcat displayed total hours in the amount of 928 hours on the machine's hour meter.

10. A skid steer has a log hour display inside of its cab or interior which indicates the amount of hours the machine has been in use and is similar to an odometer of a motor vehicle reflecting use and wear and tear on the machine.

11. Plaintiff found PQ's website advertisement for the Bobcat and relying on such log hour meter representation, visited PQ's physical business location on June 19, 2023, to evaluate its condition in person and test operate the Bobcat.

12. On June 19, 2023, Plaintiff's managing member, Kwame Mills ("Mills"), met with Neil Marcellino ("NM"), one of PQ's owners and managers, in which NM showed Mills the Bobcat and expressly represented to Mills that the Bobcat had 928 hours, was "fully serviced," and was still within its original manufacturer's warranty given such amount of hours.

13. Based on NM's and PQ's representations regarding the Bobcat's hours, active warranty and "fully serviced" representation, Mills, on behalf of Plaintiff, purchased the Bobcat from PQ.

14. On or about June 21, 2023, Plaintiff submitted full payment to PQ, via a third-party financing company, for the Bobcat.

15. Upon receiving full payment from Plaintiff, PQ issued a written invoice ("Invoice").  A copy of the Invoice is attached hereto as Exhibit A.

16. Pursuant to the Agreement and Invoice, Plaintiff purchased the Bobcat for $48,500.00 plus tax for a total of $51,895.00 from PQ.

17. Pursuant to the Invoice, the Bobcat had total hours in the amount of 928 and was "fully serviced."

18. When PQ and NM represented that the Bobcat was "fully serviced," this condition meant that the Bobcat had no current mechanical issues and no repairs were needed.

**B.      Plaintiff's Discovery of the Machine's True Condition**

19. Unbeknownst to Plaintiff and contrary to NM's and PQ's representations, the Bobcat did not have 928 hours, was not "fully serviced," and was not covered under the original manufacturer's warranty.

20. Upon Plaintiff taking possession of the Bobcat, the Bobcat experienced mechanical problems causing Plaintiff to engage Smith Bros. Contracting Company Inc., also known as

"Bobcat of Broward" (the "Dealer" hereinafter), to conduct diagnostic services to determine if repairs were needed for the Bobcat.

21.     In October 2023, the Dealer completed a standard inspection and diagnostic services on the Bobcat and advised Plaintiff that repairs were needed and further advised that the Bobcat was no longer under the original manufacturer's warranty as the machine had total hours in excess of 2,760 hours, not in the 900s as represented by NM and PQ.  A copy of the Dealer's Service Log Report is attached hereto as Exhibit B.

22.     The completion of the inspection indicated a discrepancy on Plaintiff's Bobcat between the amount of log hours displayed on the log hour meter (i.e., 2,760) compared to the amount of log hours being reported by the engine's computer or electronic computer module ("ECM") (i.e., 928).

23.     The engine's computer or ECM tracks the machine's lifetime amount of hours and will report such upon the completion of a diagnostic inspection even if the amount of hours are altered on the hour meter displayed in the cab or interior of the skid steer as the engine's computer or ECM always retains the lifetime hours of the machine.

24.     Moreover, upon being notified that the Bobcat was not fully serviced, Plaintiff began to research the sale history for the Bobcat utilizing its unique serial number and discovered the Bobcat was purchased at a public auction just prior to its resale.

25.      On April 11, 2023, the Bobcat was purchased at public auction by Martha Ceballos a/k/a Marta Marcellino ("MM"), wife of NM and co-owner of PQ, utilizing another business entity co-owned by NM and MM, Dirt Toys LLC ("DT"), from auctioneer McGrew Equipment Company ("McGrew") for $38,500.00.

26. At the time of auction, the Bobcat was a 2020 model with 2,758 hours, not a 2020 model with 928 hours as represented by PQ and NM to Plaintiff. A copy of the McGrew invoice is attached hereto in Exhibit C.

27. The McGrew invoice was issued to MM by McGrew via email to MM's personal email address, marthaceballos69@gmail.com, on the day of the auction stating that the Bobcat was a 2020 model with 2,758 log hours displayed on the log hour meter.

28. Prior to this auction, McGrew conducted an inspection of the Bobcat, took pictures of the Bobcat, and observed that it was a 2020 model, had a unique serial number "B4SB11068," and its log hour meter displayed 2,756 log hours. This technical information and the pictures are uploaded to all online third-party bidding websites for bidders to review, including NM and MM, prior to the auction. A copy of the McGrew report containing pictures is attached hereto as Exhibit D.

29. Following shipment of the Bobcat to MM and DT, no complaints were subsequently received by McGrew from neither MM nor DT (or PQ or NM) that the amount of hours had changed, or the hour meter was tampered with since purchase at auction.

30. Neither the McGrew invoice nor McGrew's pre-auction pictures were disclosed by PQ, NM or MM to Plaintiff prior to Plaintiff's purchase of the Bobcat.

### C.    The Marcellinos' Fraudulent Scheme

31. At all times material hereto, NM and MM were fully aware the Bobcat was purchased at auction with hours greater than the amount represented to Plaintiff, was not covered by an original manufacturer warranty, and was not fully serviced as represented to Plaintiff.

32. NM and MM devised and carried out a fraudulent scheme, utilizing PQ and DT, to defraud customers, including Plaintiff, by purchasing construction machinery at auction and

subsequently altering the hour meter displays of and misrepresenting other attributes of such machinery in order to resell such machines at a higher price for greater financial gain.

33. Similar to motor vehicles, the value of a skid steer is highly affected by the machine's model year, amount of hours worked, and its service history.

34. NM and MM are husband and wife.

35. NM and MM are owners and operators of PQ and DT, which are both located at the same principal place of business or office address.

36. NM and MM purchase machines at public auction, including auctions offered by McGrew, using an account utilizing MM's maiden name, personal cellular telephone number, and DT's name.

37. MM officially changed her name from Ceballos to Marcellino twenty-four years ago but still uses it for public auction purchases.

38. DT does not provide any services nor sells machines to the public and is only used to purchase machines at auction.

39. Specifically, NM and MM carried out the scheme by: (i) MM creating bidding accounts with McGrew, or third party bidding websites, using her maiden name, personal email address (marthaceballos69@gmail.com) and DT to conceal any connection to PQ; (ii) NM and MM bidding for and purchasing the Bobcat utilizing DT to conceal any connection to PQ; (iii) NM and MM, or via third-party, altering the hour meter of the Bobcat following purchase to conceal the machine's true condition; (iv) NM and MM advertising the Bobcat via MM's personal social media accounts (e.g., Facebook and Instagram) and PQ's website mispresenting the service history and hour amount to customers, including Plaintiff, to induce customers to purchase at excessive prices beyond fair market value not based on the machine's true condition; and (v) PQ

and NM expressly mispresenting the service history, active warranty status, and hour amount to customers, including Plaintiff, in order to induce customers to purchase machinery at excessive costs beyond fair market value and not based on the true condition.

40.  Based on the repairs needed and prior auction sale record, Plaintiff paid PQ an excessive and unconscionable purchase price for the Bobcat grossly disproportionate to its actual fair market value based on the true condition (i.e., based on the actual service history, warranty status, and hour amount).

### D.  Broward County Lawsuit

41.  On January 19, 2024, Plaintiff filed a lawsuit against PQ and NM in Broward County Case COCE-24-004057 ("State Action") for various causes of action including for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") which was later amended to add MM and DT as co-defendants.

42.  On June 29, 2025, the Court in the State Action entered an Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment finding in favor of Plaintiff against PQ for violating FDUTPA ("Summary Judgment Order").  A copy of the Summary Judgment Order is attached hereto as Exhibit E.

43.  A jury trial was held in the State Action from June 30, 2025, though Jully 2, 2025, in which the jury entered a verdict in favor of Plaintiff, including liability on PQ's part for fraudulent misrepresentation in addition to the FDUTPA violation pursuant to the Summary Judgment Order.  Subsequently, a Final Judgment was entered for Plaintiff against PQ and NM in which PQ is liable for the total sum of $10,000.00.  A copy of the Final Judgment is attached hereto as Exhibit F.

**CAUSES OF ACTION**

**COUNT I – VIOLATION OF THE FLORIDA
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

44. Plaintiff realleges and incorporates herein Paragraphs 1 through 43 set forth above.

45. Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

46. PQ implemented and carried out a fraudulent scheme with the intent to target purchasers of construction equipment for greater financial gain, including Plaintiff.

47. Specifically, PQ knowingly and willfully (i) manipulated and changed the time reading or meter on the Bobcat to display lower log hours in order to obtain a higher purchase amount from Plaintiff; (ii) misrepresented the Bobcat was currently still under warranty with the manufacturer based on the false hour reading or amount in order to obtain a higher purchase amount from Plaintiff; and (iii) misrepresented the Bobcat was "fully serviced" in order to obtain a higher purchase amount from Plaintiff

48. Such false misrepresentations and concealment by PQ constitute unfair and/or deceptive acts or practices as the acts offend established public policy and are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, including Plaintiff.

49. As a direct result of PQ's unfair and/or deceptive trade practices, Plaintiff has suffered actual damages, including but not limited to, paying an excessive, inflated purchase price for the Bobcat greater and grossly disproportionate to the fair market values of such machine in its true condition.

WHEREFORE, Plaintiff demands the entry of a judgment in its favor against PQ for damages, costs, attorney's fees, and for such other relief as this Court deems just and proper.

## COUNT II – OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

50.     Plaintiff realleges and incorporates herein Paragraphs 1 through 43 set forth above.

51.     Bankruptcy Code § 523(a)(2) does not discharge any debtor of any debt "for money . . . obtained by (A) false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

52.     PQ obtained money from Plaintiff through false representation and actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

53.     PQ implemented and carried out a fraudulent scheme with the intent to target purchasers of construction equipment for greater financial gain, including Plaintiff.

54.     PQ knowingly and willfully (i) manipulated and changed the hour meter on the Bobcat to display lower hours in order to obtain a higher purchase amount from Plaintiff; (ii) misrepresented the Bobcat was currently still under warranty with the manufacturer based on the false hour reading or amount in order to obtain a higher purchase amount from Plaintiff; and (iii) misrepresented the Bobcat was "fully serviced" in order to obtain a higher purchase amount from Plaintiff.

55.     NM, on behalf of PQ, made material misrepresentations of fact that: (i) PQ was selling to Plaintiff a Bobcat with 928 hours; (ii) PQ was selling to Plaintiff a Bobcat still under its original manufacturer's warranty; and (iii) PQ was selling to Plaintiff a Bobcat that was "fully serviced."

56.     PQ knowingly, willfully, and intentionally made these representations, knew that they were false, and did not intend to sell the Bobcat with the hour amount, service history, and active warranty to Plaintiff.

57.     PQ made such misrepresentations for the purpose of inducing Plaintiff to rely upon them.

58.     Plaintiff reasonably expected that it was purchasing a Bobcat with the represented hours, service history, and active warranty and justifiably relied on such false statements when Plaintiff performed all of its obligations to purchase the machine.

59.     As a direct and proximate result of PQ's material misstatements, misrepresentations and omissions, Plaintiff suffered damages.

WHEREFORE, PQ should not be able to obtain a discharge of the debt owed to Plaintiff pursuant to Bankruptcy Code § 523(a)(2)(A).

### COUNT III – OBJECTION TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

60.     Plaintiff realleges and incorporates herein Paragraphs 1 through 43 set forth above.

61.     Bankruptcy Code § 523(a)(6) prohibits the discharge of a debtor for willful and malicious injury by the debtor to another entity or to the property of another entity; 11 U.S.C. § 523(a)(6).

62.     PQ obtained money from Plaintiff through willful and malicious injury within the meaning of Bankruptcy Code § 523(a)(6).

63.     PQ, through the deliberate acts of NM and MM, knowingly and willfully caused financial injury to Plaintiff.

64.     Such deliberate acts were malicious, wrongful, and without just cause.

WHEREFORE, PQ should not be able to obtain a discharge of the debt owed to Plaintiff pursuant to Bankruptcy Code § 523(a)(6).

### COUNT IV – ATTORNEY'S FEES AND COSTS

65.     Plaintiff realleges and incorporates herein Paragraphs 1 through 43 set forth above.

10

66.     Pursuant to section 501.2105(1)-(4), in any civil litigation resulting from a violation of the FDUTPA, a prevailing party may receive reasonable attorney's fees and costs from the non-prevailing party after judgment in the trial court.

67.     In the State Action, Plaintiff obtained a final summary judgment order against PQ for a violation of the FDUTPA.

68.     Therefore, as a prevailing party, Plaintiff is entitled to an award for attorney's fees and costs.

69.     Attorney fee and cost awards connected to PQ's debt as a result of FDUTPA are nondischargeable.

WHEREFORE, Plaintiff demands the entry of a judgment (i) awarding attorney's fees and costs against PQ for violating the FDUTPA; (ii) determining such award is nondischargeable; and (iii) awarding additional reasonable attorney's fees and costs for having to bring this action.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated October 26, 2025                    Respectfully Submitted,

/s/ Matthew M. Fischer
Matthew M. Fischer, Esq.
Florida Bar No. 40997
MATTHEW M. FISCHER, P.A.
110 E. Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 859-5558
Fax: (954) 859-5525
matt@fischerlawpa.com

*Counsel for Plaintiff / Creditor Black Star Investment Group LLC*